UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:11-cv-435-RJC
3:08-cr-225-RJC

| | |
|---|---|
| IVAN HRCKA, ) | |
| ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| ) | **ORDER** |
| vs. ) | |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| ) | |
| Respondent. ) | |
| _____ ) | |

**THIS MATTER** is before the Court on Petitioner's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255, (Doc. No. 1), the Government's Response and Motion for Summary Judgment, (Doc. Nos. 8 and 9), Petitioner's Reply, (Doc. No. 20); and related pleadings. For the reasons stated below, the Court will grant the Government's motion and will deny and dismiss Petitioner's § 2255 motion.

I.  BACKGROUND

Petitioner was arrested on a complaint detailing two charges relating to his alleged presentation of a Slovakian passport with a fraudulent immigration stamp and his alleged admission of that fact.[1] (Case No. 3:08-cr-225, Doc. No. 1 at 2). At his initial appearance before a magistrate judge, he was warned that at the conclusion of the federal criminal proceedings he

---

[1] The complaint also stated Petitioner was an INTERPOL fugitive with an outstanding international arrest warrant from the Slovak Republic and subject to administrative removal proceedings. (Case No. 3:08-cr-225, Doc. No. 1 at 1).

1

would be extradited to Slovakia. (Id., Doc. No. 17: Hr'g Tr. at 4, 10). Petitioner was appointed counsel and detained pending trial. (Id., Doc. No. 2: Order of Detention; Oral Order, Oct. 9, 2008). At Petitioner's preliminary hearing, he told the magistrate judge that he had hired a lawyer. (Id., Doc. No. 18: Hr'g Tr. at 3-4). The public defender reported that she had spoken to that lawyer who said he was only hired to represent Petitioner on his separate immigration matters; afterward, an assistant public defender arrived to represent Petitioner on the criminal charges. (Id.).

Petitioner was later charged by a grand jury in this district with uttering a fraudulent passport, in violation of 18 U.S.C. § 1546(a) (Count One); presenting an immigration document containing a material false statement, in violation of the same statute (Count Two); and using a false document in a matter within the jurisdiction of an agency of the United States, in violation of 18 U.S.C. § 1001, and entered a not guilty plea at arraignment. (Id., Doc. No. 6: Superseding Indictment; Doc. No. 7: Waiver of Appearance and Entry of Plea of Not Guilty).

Petitioner's trial was scheduled for the Court's December criminal trial term. (Id., Doc. No. 4: Scheduling Order). Counsel filed pretrial motions for a bill of particulars, for discovery, and to dismiss, (Id., Doc. No. 8), which were denied by the Court prior to trial, (Id., Doc. No. 13: Order). During the trial, an immigration officer testified that Petitioner sought legal permanent residency in 2007 based on his wife's U.S. citizenship by submitting form I-485. (Id., Doc. No. 39: Trial Tr. at 102-03). As part of that process, she interviewed him in April and October 2008, during which Petitioner answered questions under oath and presented his passport. (Id. at 104, 106, 110). Petitioner wrote in the application and told the officer that he last entered the U.S. on October 10, 1996, yet the passport he submitted showed an entry stamp on November 18, 1997.

2

(Id. at 115-16). He explained that he came into the country illegally in 1996, but legally in 1997 when the passport was stamped in New York by an immigration officer. (Id. at 116-17, 119).

A special agent with the Department of Homeland Security, Immigration and Customs Enforcement ("ICE"), testified that he arrested Petitioner based on the international warrant on October 7, 2008. (Id. at 167). After being advised of his rights, Petitioner admitted that he paid someone in New York $1,200 to place the 1997 immigration stamp in his passport to make it appear more legitimate. (Id. at 168, 174). Petitioner said he knew placing stamp into his passport was illegal, that it was not a valid immigration stamp, but that he presented it to the immigration officer with the hope that there would be no records for verification and it would be accepted. (Id. at 174).

During his case, Petitioner called the person who assisted him in filling out immigration forms in 2001 and 2007. (Case No. 3:08-cr-225, Doc. No. 40: Trial Tr. at 227, 229, 234). Petitioner had not shown her the passport, but she knew it would have been illegal to have a fake stamp in it. (Id. at 234-35). The Court informed Petitioner in a jury-out hearing about his right to testify or not, according to his own decision. (Id. at 243-44). Petitioner affirmed that he understood his rights and had decided to testify after consultation with counsel. (Id. at 244). During his testimony, Petitioner admitted purchasing the stamp in New York City and telling the immigration officer he obtained the stamp legally when he arrived in 1997. (Id. at 250, 258, 261-62).

The Court dismissed Count Three for lack of materiality (Case No. 3:08-cr-225, Doc. No. 39: Trial Tr. at 193), and the jury found Petitioner guilty of Counts One and Two. (Id., Doc. No. 21: Verdict). The Court later sentenced Petitioner to time served on each count followed by a two year term of supervised release. (Id., Doc. No. 34: Judgment at 2-3). Conditions of his

3

supervised release included that Petitioner would be surrendered to immigration officials for deportation and that, if deported, he would remain outside the U.S. (Id. at 3). Petitioner appealed to the U.S. Court of Appeals for the Fourth Circuit, (Case No. 3:08-cr-225, Doc. No. 31: Notice of Appeal), which affirmed his conviction and sentence, United States v. Hrcka, 384 F. App'x 232 (4th Cir. 2010). The Supreme Court later denied Petitioner's petition for writ of certiorari. Hrcka v. United States, 131 S. Ct. 1569 (2011).

Petitioner timely filed the instant § 2255 motion claiming: (1) ineffective assistance of counsel for taking the case to trial rather than obtaining a plea to a lesser charge (Ground One); (2) ineffective assistance of counsel for failing to advise him of the immigration consequences of conviction (Grounds Two and Three); and (3) prosecutorial misconduct for forcing a trial witness to commit perjury (Ground Four). (Doc. No. 1). Petitioner later filed an amended motion generally expounding on his claims of ineffective assistance of counsel, including counsel's advice regarding testifying at the trial.[2] (Doc. No. 3). The Government moved for summary judgment, (Doc. No. 9), and with the filing of Petitioner's reply, (Doc. No. 20), this matter is ripe for disposition.

II.  STANDARD OF REVIEW

Pursuant to Rule 4(b) of the Rules Governing Section 2255 Proceedings, sentencing courts are directed to examine motions to vacate, along with "any attached exhibits and the record of prior proceedings" in order to determine whether a petitioner is entitled to any relief. Summary judgment is appropriate in cases where there is no genuine dispute as to a material fact and it appears that the moving party is entitled to judgment as a matter of law. United States v.

---

[2] The Court previously denied another motion to amend, (Doc. No. 4), because it presented a non-justiciable claim, (Doc. No. 10: Order).

4

Lee, 943 F.2d 366, 368 (4th Cir. 1991) (applying summary judgment to a motion to vacate). Any permissible inferences which are drawn from the underlying facts must be viewed in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986). However, when the record taken as a whole could not lead a trier of fact to find for the non-moving party, granting summary judgment is appropriate. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). The mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. See id. Therefore, if the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate. Id. at 249–50,

The Court has considered the record in this matter and applicable authority and concludes that all the claims can be resolved without an evidentiary hearing. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970) (affirming summary disposition where files and records conclusively show that petitioner is entitled to no relief).

III.    DISCUSSION

    A.    Live Case or Controversy

"The custody requirement of the habeas corpus statute is designed to preserve the writ of habeas corpus as a remedy for severe restraints on individual liberty." Hensley v. Mun. Court, 411 U.S. 345, 351 (1973). "Once the convict's sentence has expired, however, some concrete and continuing injury other than the now-ended incarceration or parole – some 'collateral consequence' of the conviction – must exist if the suit is to be maintained." Spencer v. Kemna, 523 U.S. 1, 7 (1998)(citations omitted). With regard to immigration cases, if a petitioner faces a lifetime bar from legal re-entry as a result of the decision, then he suffers a "collateral consequence."Swaby v. Ashcroft, 357 F.3d 156, 160 (2d Cir. 2004). However, if a petitioner is

5

permanently barred from re-entry on a wholly separate ground from the conviction he is attacking, he does not present a live case or controversy. Perez v. Greiner, 296 F.3d 123, 125-26 (2d Cir. 2002).

Here, Petitioner contends that he would be eligible to reopen immigration proceedings if the conviction at issue were vacated and the international arrest warrant were withdrawn. (Doc. No. 20: Reply at 2). The Government maintains that Petitioner is barred from reentering the United States for reasons separate and apart from his convictions for passport fraud, including lying to the immigration officer and illegally entering the U.S. for more than a year prior to removal. (Doc. No. 34: Supplemental Response at 12). However, the Government acknowledges that such grounds are subject to discretionary waiver under limited circumstances. (Id. at 13 n.1). Therefore, in light most favorable to Petitioner, the Court finds that it should address the merits of his claims.

      B.      Ineffective assistance of counsel

In order to prevail on a claim of ineffective assistance of counsel, a petitioner must show that: (1) "counsel's representation fell below an objective standard of reasonableness," and (2) the deficient performance was prejudicial the defense. Strickland v. Washington, 466 U.S. 668, 687-88 (1984). In measuring counsel's performance, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. . ." Id. at 689. A petitioner seeking post-conviction relief based on ineffective assistance of bears a "heavy burden in overcoming this presumption." Carpenter v. United States, 720 F.2d 546, 548 (8th Cir. 1983). Conclusory allegations do not overcome the presumption of competency. Id.

Under these circumstances, Petitioner "bears the burden of proving Strickland prejudice." Fields v. Attorney Gen. of Md., 956 F.2d 1290, 1297 (4th Cir. 1992) (citing Hutchins v.

Garrison, 724 F.2d 1425, 1430-31 (4th Cir. 1983). If Petitioner fails to meet this burden, "a reviewing court need not consider the performance prong." Fields, 956 F.2d at 1297 (citing Strickland, 466 U.S. at 697). In considering the prejudice prong of the analysis, the Court must not grant relief solely because Petitioner can show that, but for counsel's performance, the outcome of the proceeding would have been different. See Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998). Rather, the Court "can only grant relief under the second prong of Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Id. (quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)).

        1.     Plea to lesser charge

Petitioner claims counsel took his case to trial for personal reasons and failed to get him a lesser charge that would not have resulted in deportation (Ground One). (Doc. No. 1: Motion at 4). The Supreme Court has held that an ineffective assistance claim may be based on counsel's failing to communicate a plea offer, Missouri v. Frye, 132 S. Ct. 1399, 1408-11 (2012), or giving bad advice leading to rejection of a favorable offer, Lafler v. Cooper, 132 S. Ct. 1376, 1383-88 (2012). However, Petitioner has not shown any authority for the claim that counsel's failing to negotiate a plea to a lesser offense falls below an objective standard of reasonable performance. He does not even allege any facts showing the Government was willing to offer a plea to a lesser charge; therefore, this claim is without merit.

        2.     Advice about trial consequences

Petitioner next claims that counsel and the Court failed to advise him of the immigration consequences of conviction at trial (Grounds Two and Three). (Doc. No. 1: Motion at 5, 7). The record directly contradicts Petitioner's claim, as the magistrate judge specifically informed Petitioner at his initial appearance that he would be removed to Slovakia at the conclusion of the

7

criminal case. (Case No. 3:08-cr-225, Doc. No. 17: Hr'g Tr. at 4, 10). Additionally, Petitioner has not shown that the outcome of the proceeding would have been any different had he chosen to plead guilty instead of going to trial. Finally, the requirement that an attorney must advise a noncitizen client that pleading guilty to a criminal charge may carry a risk of adverse immigration consequences found by the Supreme Court in Padilla v. Kentucky, 559 U.S. 356 (2010), is not retroactive to cases on collateral review. Chaidez v. United States, 133 S. Ct. 1103, 1113 (2013). Therefore, Petitioner is not entitled to relief on this claim.

        3.        Advice about testifying

In his amended motion, Petitioner blames counsel for advising him to take the stand in his own defense. (Doc. No. 3 at 2). Yet, Petitioner told the Court that he made the decision to testify because he had nothing to hide. (Case No. 3:08-cr-225, Doc. No. 40: Trial Tr. at 244). Additionally, Petitioner does not challenge the facts that he admitted to the ICE agent that he purchased the forged entry stamp after illegally entering the country and that he knowingly presented his fraudulent passport to an immigration official attempting to gain legal permanent residency. Thus, Petitioner has not shown outcome of the trial would have been different without his testimony and that the outcome was unfair or unreliable. Thus, counsel's advice to Petitioner about whether to testify in the trial was not prejudicial, and this claim is without merit.

        C.        Prosecutorial Misconduct

        1.        Witness tampering

Petitioner claims a trial witness lied under oath because of a threat from the Government. (Doc. No. 1: Motion at 8). Petitioner asserts the witness told him the stamp was good and could be taken to immigration. (Id.). At trial, she testified that Petitioner had not shown her the passport with a forged stamp and that she would have advised him not to use it because it was

illegal. (Case No. 3:08-cr-225, Doc. No. 40: Trial Tr. at 235). Petitioner had the opportunity to examine the witness about the alleged inconsistent statement, but has not put forth any facts suggesting that the Government influenced the witness in any way. Thus, he has failed to carry his burden to show conduct that was improper and that the conduct caused substantial prejudice and deprived him of right to a fair trial. See United States v. Golding, 168 F.3d 700, 702 (4th Cir. 1999) (stating test for reversible prosecutorial misconduct).

2. Malicious prosecution

In his amended motion, Petitioner claims the Government prosecuted his case not only because of the fraudulent stamp in his passport, but also because he was wanted in his home country. (Doc. No. 3 at 3). He asserts issues outside the United States should not have been a reason to charge and that he would not have been prosecuted but for those issues. (Id.). A selective prosecution claim must be based on unconstitutional considerations, such as race, religion, or the exercise of constitutional rights. United States v. Marcum, 16 F.3d 599, 602 (4th Cir. 1994). Here, the Government noted Petitioner's fugitive status as a circumstance that affected the decision to accept the case. (Doc. No. 3:08-cr-225, Doc. No. 41: Sent. Hr'g at 13). Although the Court refused to consider the pending charges in his home country in determining the time-served punishment, there is no evidence that the Government's decision resulted from unconstitutional considerations. Therefore, Petitioner is not entitled to a hearing on this claim.

IV. CONCLUSION

After reviewing the entire record in the light most favorable to Petitioner, the Court finds no genuine issues of material fact such that a rational trier of fact could find that Petitioner is entitled to relief on any of his claims.

9

**IT IS, THEREFORE, ORDERED** that:

1. The Government's Motion for Summary Judgment, (Doc. No. 9), is **GRANTED**;

2. Petitioner's Motion to Vacate, (Doc. No. 1), is **DENIED** and **DISMISSED**; and

3. Pursuant to Rule 11(a) of the Rules Governing Section 2255 Cases, the Court **DECLINES** to issue a certificate of appealability as Petitioner has not made a substantial showing of a denial of a constitutional right. 28 U.S.C. § 2253(c)(2); <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 336-38 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong).

Signed: September 29, 2014

Robert J. Conrad, Jr.
United States District Judge